**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

FILED

2015 APR 20  PM 2: 16

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ AD

**WORKSTEPS, INC.,**
                              **Plaintiff,**

-vs-                                                           **Case No.  A-14-CA-968-SS**

**ERGOSCIENCE,   INC.,   DEBORAH   E.
LECHNER, & DOES (1-300),**
                              **Defendants.**

_____

## O R D E R

BE IT REMEMBERED on the 7th day of January 2015, the Court held a hearing in the above-styled cause, and the parties appeared by and through counsel.  Before the Court are Defendants ErgoScience, Inc. and Deborah E. Lechner's Motion to Dismiss [#8], Plaintiff WorkSTEPS' Response [#19] thereto, Defendants' Reply (Defs.' MTD Reply) [#25] thereto, Defendants' Supplement to Pending Motion to Dismiss/Motion for Summary Judgment (Defs.' Mot. Summ. J.) [#27], Plaintiff's Opposition Memorandum to Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for [Partial] Summary Judgment [#32-2] (sealed), Defendants' Reply in Support of Motion to Dismiss/Motion for Summary Judgment and Response to Plaintiff's Cross-Motion for Summary Judgment [#39], Plaintiff's Reply to Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment [#42], and Plaintiff's Motion to File Pleadings Under Seal [#32] (sealed).[1]  Having reviewed the documents, the arguments

_____

[1] Plaintiff's Motion to File Pleadings Under Seal [#32] is GRANTED.

of the parties at hearing, the file, and the governing law, the Court now enters the following opinion and orders.

## Background

This is an action for copyright infringement and breach of contract brought by Plaintiff WorkSTEPS, Inc. against Defendants ErgoScience, Inc., Deborah Lechner, President of ErgoScience, and Does 1-300, unknown alleged third-party infringers, for alleged willful, contributory, and induced infringement in violation of a consent judgment and settlement agreement. WorkSTEPS is a national provider of "functional employment testing," a type of testing designed to evaluate the physical abilities of job applicants and new employees such that workers' jobs are matched to their physical capabilities, decreasing the likelihood of job-related injuries. ErgoScience is also a provider of functional employment testing and directly competes with WorkSTEPS.

WorkSTEPS holds a copyright in various materials related to its testing programs under Copyright Registration Number TXu000942472. The two copyrighted documents at issue in this case are WorkSTEPS' "Functional Capacity Evaluation," a twelve-page detailed form that guides WorkSTEPS' providers through administration of WorkSTEPS' functional employment test and provides space for recording the results as the test proceeds, and WorkSTEPS' "Medical History" form, a questionnaire apparently given prior to administration of the Functional Capacity Evaluation (together, the WorkSTEPS Materials). WorkSTEPS alleges ErgoScience's "Physical Agility Test" and incorporated "Medical Issues" form infringe the WorkSTEPS Materials.

This is the second time WorkSTEPS has brought suit alleging ErgoScience has infringed its copyright. Although the original dispute between the parties was dismissed by consent judgment in July of 2012, attorney error (and, evidently, a heaping helping of inability to compromise) brought

the action roaring back two years later.  The mess the parties have made is now spread over two

cause numbers: this one, No. 1:14-CV-968-SS, and the originally filed suit, *WorkSTEPS, Inc. v.*

*Johnston et al.*, No. 1:10-CV-850-SS (W.D. Tex. 2010) (the Original Suit).  A brief history is

outlined below.

## A.    The Original Suit

In the Original Suit, WorkSTEPS claimed ErgoScience, Lechner, and Donna Johnston, an

ErgoScience employee not party to the present action, infringed WorkSTEPS' copyright by

incorporating portions of the WorkSTEPS Materials into ErgoScience's testing materials.  After

completing discovery, the parties to the Original Suit informed the Court they had settled the case.

Under the parties' settlement agreement, the defendants agreed to pay WorkSTEPS $75,000 and to

cease using WorkSTEPS' copyrighted materials.  Mot. Order Show Cause [#39-9] (sealed), Feeler

Decl., Ex. 3 (Settlement Agreement) at 3, Original Suit.[2]  On July 26, 2012, the parties jointly moved

the Court for entry of a consent judgment against the defendants.  Agreed Stipulation [#31] at 1–2,

Original Suit.  On July 30, 2012, the Court entered the consent judgment as drafted by the parties.

Consent Judgment [#32] at 2, Original Suit.

As part of the Settlement Agreement, the parties negotiated a safe harbor which would permit

ErgoScience to use certain materials without threat of further litigation.  *See* Mot. Order Show Cause

[#39-8] (sealed), Feeler Decl., Ex. 2 (Safe Harbor) at 3, Original Suit.  Unfortunately, a serious

miscommunication occurred during the negotiations.  During WorkSTEPS' final review of the

proposed safe harbor, WorkSTEPS "redlined," or electronically crossed out, certain portions,

---

[2] The parties have incorporated all briefing related to the show cause hearing in the Original Suit into their arguments on the present motion. *See* Pl.'s Resp. [#19] at 20–21 & n.104; Defs.' Mot. Summ. J. [#27] at 4 n.2.  The Court will therefore consider and refer to those documents and arguments throughout this opinion.

indicating WorkSTEPS did not agree to inclusion of those portions in the final safe harbor.  *See* Defs.' Resp. Mot. Order Show Cause [#54] (sealed) at 1, Original Suit.  WorkSTEPS then sent the redlined version to ErgoScience via email.  Counsel for ErgoScience printed and reviewed the safe harbor—but, apparently due to the configuration of certain printing settings in Adobe Acrobat (counsel's PDF reader), WorkSTEPS' electronic redlines did not appear on the printed document.  *Id.* at 1–2.  Believing WorkSTEPS had agreed to the proposed safe harbor without redlining anything, counsel for ErgoScience confirmed the same to his clients, and "relyi[ng] on its lawyer's confirmation that the 'safe harbor' materials had been fully approved by WorkSTEPS," ErgoScience signed the Settlement Agreement and proceeded to use all of the proposed safe harbor materials in its business, including those WorkSTEPS redlined.  *Id.* at 2; *see also* Mot. Order Show Cause [#39-16] (sealed), Feeler Decl., Ex. 10 (July 31, 2013 Letter) at 1–2, Original Suit (letter from Brandon Browning, then-counsel for ErgoScience, to counsel for WorkSTEPS explaining the error).

WorkSTEPS eventually discovered ErgoScience's use of the redlined materials, reigniting the infringement dispute.  To their credit, the parties attempted to resolve their issues without court involvement, but were ultimately unsuccessful.  *See, e.g.*, July 31, 2013 Letter; Mot. Order Show Cause [#39-17] (sealed), Feeler Decl., Ex. 11, Original Suit (Sept. 27, 2013 Letter).  Consequently, on August 5, 2014, WorkSTEPS filed a motion for order to show cause in the Original Suit.  *See* Mot. Order Show Cause [#39] (sealed), Original Suit.  In its motion, WorkSTEPS argues ErgoScience has committed willful infringement, should be held in contempt of the Consent Judgment, and is liable to WorkSTEPS for damages and attorney's fees.

The Court held a show cause hearing in the Original Suit on September 5, 2014.  During the hearing, the Court heard testimony concerning the alleged infringement from Larry Feeler, CEO of

WorkSTEPS and author of the materials at issue, and ordered the parties to submit supplemental briefing on the question whether the issue of infringement, in the context of a contempt proceeding, should be tried to a jury or the bench. In that briefing, WorkSTEPS indicated because "the law is unsettled as to what relief a complainant in a contempt proceeding may recover[,]" it would file a new lawsuit and seek to consolidate the two cases to preserve its rights. Pl.'s Brief Responsive to Court's Sept. 5, 2014 Order [#58] at 4, Original Suit. WorkSTEPS has not sought consolidation of the Original Suit and the present action.

**B.      The Present Action**

On October 24, 2014, WorkSTEPS filed its complaint in the present action. The complaint alleges the facts as recounted above, tracing the history of the Original Suit and the redline mix-up that brought the parties back to court. *See* Compl. [#1] ¶¶ 23–42. The complaint alleges Lechner and ErgoScience willfully distributed materials which infringe WorkSTEPS' copyright and actively induced their network of third-party providers to infringe by instructing those providers to reproduce and distribute the infringing materials. *Id.* ¶¶ 43–50. As previously noted, WorkSTEPS brings causes of action for: (1) willful, contributory, and induced infringement by Lechner, ErgoScience, and Does 1-300, the unidentified third-party providers to whom ErgoScience distributed its materials; (2) breach of contract against Lechner and ErgoScience for alleged violation of the Settlement Agreement; and (3) collateral estoppel, claiming the Original Suit "resolved, in favor of WorkSTEPS, the issue of that [sic] Reg. No. TXu000942472 is valid and enforceable and that Lechner and ErgoScience's works infringed WorkSTEPS' copyrights." *Id.* ¶¶ 51–69.

Defendants filed their motion to dismiss on November 19, 2014. *See* Mot. Dismiss [#8]. Given the evidence outside the pleadings submitted with Defendants' motion, at hearing on January

7, 2015, the Court informed the parties it would construe the motion to dismiss as a motion for summary judgment and permit the parties to supplement the record with additional evidence and argument. Hr'g Tr. [#28] at 20:22–25. Following Defendants' submission of a supplement, *see* Defs.' Mot. Summ. J. [#27], WorkSTEPS responded and cross-moved for partial summary judgment on the issue of liability for copyright infringement. *See* Pl.'s Opp. & Cross-Mot. Summ. J. [#32-2] (sealed) at 1.

## Analysis

### I.   Legal Standard

### A.   Converted Motion to Dismiss

Under Federal Rule of Civil Procedure 12(d), a Rule 12(b)(6) motion to dismiss may be converted into a Rule 56 motion for summary judgment if matters beyond the pleadings are presented to and considered by the court. FED. R. CIV. P. 12(d); *Exxon Corp. v. Md. Cas. Co.*, 599 F.2d 659, 661 (5th Cir. 1979). Prior to conversion, all parties must be given notice and a reasonable opportunity to present all material pertinent to the motion. *Id.*; *Smith's Estate v. Tarrant Cnty. Hosp. Dist.*, 691 F.2d 207, 208 (5th Cir. 1982).

### B.   Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita*, 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *Id.*  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to establish the

existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.   Application

The long procedural history of this case and the high degree of enmity between the parties have together created a whopper of a problem.  Nearly five years after the dispute between WorkSTEPS and ErgoScience began, they have managed to reach agreement on precisely zero issues of consequence, and their inability to compromise is evidenced by the tangle of issues and looming tower of acerbic paper presently before the Court.

The parties' arguments raise three preliminary questions: first, whether Defendants are collaterally estopped by the consent judgment in the Original Suit from contesting copyright infringement; second, whether ErgoScience's use of the redlined material was a material breach of the Settlement Agreement, enabling WorkSTEPS to sue ErgoScience for use of the safe harbor material that WorkSTEPS did *not* redline (the non-redlined material); and third, whether WorkSTEPS waived its ability to contend ErgoScience's use of the non-redlined material infringes WorkSTEPS' copyright.  As set forth below, the Court first finds the consent judgment in the Original Suit has no collateral-estoppel effect.  Second, while neither party raised the issue, the Court finds the Settlement Agreement is not a binding, enforceable contract, as there was no mutual assent concerning the safe harbor, and in the alternative, finds ErgoScience materially breached the Settlement Agreement.   Finally, the Court finds WorkSTEPS did not waive its ability to contend the non-redlined material infringes its copyright.

Turning to the question of copyright infringement, the Court finds WorkSTEPS holds a valid copyright as a matter of law, but determines there are genuine issues of material fact precluding

summary judgment on the issue of substantial similarity. Finally, the Court finds ErgoScience is entitled to summary judgment on WorkSTEPS' breach-of-contract claim, as there was no enforceable Settlement Agreement to be breached; in the alternative, the Court concludes WorkSTEPS' breach-of-contract claim is preempted by the Copyright Act. This case will therefore proceed to trial on the issue of substantial similarity between the parties' works.

A.     **The Consent Judgment Has No Collateral-Estoppel Effect**

Count Three of WorkSTEPS' complaint alleges offensive collateral estoppel. According to WorkSTEPS, the Original Suit "resolved, in favor of WorkSTEPS, the issue of that [sic] Reg. No. TXu000942472 is valid and enforceable and that Lechner and ErgoScience's works infringed WorkSTEPS' copyrights." Compl. [#1] ¶ 66. According to WorkSTEPS, the "issue of infringement was fully litigated and resolved . . . through Lechner and ErgoScience's . . . joint motion with WorkSTEPS for a Consent Judgment and permanent injunction[,]" and that alleged "determination" of infringement "was the primary part of the Consent Judgment entered by the Court." *Id.* ¶¶ 67–68. Thus, in WorkSTEPS' view, "[a]s a proximate result of the Consent Judgment, and Defendants Lechner and ErgoScience's motion for entry of the same, Lechner and ErgoScience are collaterally estopped" from contesting the issues of validity, copyrightability, and infringement of WorkSTEPS' copyright. *Id.* ¶ 69.

ErgoScience brushes aside WorkSTEPS' estoppel argument concerning validity of its copyright and copyrightability, stating even if ErgoScience was to concede validity and copyrightability, ErgoScience would still win on absence of substantial similarity. Defs.' MTD Reply [#25] at 10–11. Further, ErgoScience argues the Original Suit has no collateral-estoppel effect concerning infringement because the Original Suit involved a different set of allegedly infringing

ErgoScience materials.  Mot. Dismiss [#8] at 21.  According to ErgoScience, because WorkSTEPS'

claims in the present action are based on the ErgoScience materials as revised during settlement

negotiations, the two infringement issues are not identical, the identical issue was not "actually

litigated," *see Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 868 (5th Cir. 2000), and consequently,

collateral estoppel cannot apply.  *Id.*

Both parties' arguments miss the mark, primarily because they completely fail to

acknowledge the difference between a typical judgment and a *consent* judgment.  A consent

judgment ordinarily does not give rise to collateral estoppel, or issue preclusion, "because the issues

underlying the judgment are neither actually litigated nor necessary and essential to the judgment."

*Hughes v. Santa Fe Int'l Corp.*, 847 F.2d 239, 241 (5th Cir. 1988); *see also Kaspar Wire Works, Inc.*

*v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 539 (5th Cir. 1978) ("The parties' proposal does not

reflect the considered judgment of a judicial officer: it has been forged by them alone as an

adjustment of conflicting claims and is not a tempered determination of fact and law[.]");

RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. e ("In the case of a judgment entered by

confession, consent, or default, none of the issues is actually litigated.  Therefore, the rule of [issue

preclusion] does not apply with respect to any issue in a subsequent action.").  Thus, WorkSTEPS'

contention that validity, copyrightability, and infringement were actually litigated in the Original Suit

is incorrect.  The Court did not "determine" any issue on the merits when it entered the Consent

Judgment; notably, no briefing on the merits of the Original Suit was even filed with the Court prior

to the parties' settlement.

Further, while a consent judgment may be given collateral-estoppel effect if the parties to the

settlement manifest such intention, *Arizona v. California*, 530 U.S. 392, 414 (2000); *Hughes*, 847

F.2d at 241, the Court finds no such manifestation of intent in this case.  The Consent Judgment

reads in full:

> This matter comes before the Court on the application of the parties in the [Original Suit] for entry of judgment and an order of dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1), the parties having advised the Court that they have reached a settlement.
>
> It is therefore ORDERED that:
>
> A.    Defendants are jointly and severally liable as stated in the Settlement Agreement;
>
> B.    Defendants are immediately and permanently enjoined from infringing or using the copyrighted works registered by copyright registration number TXu000942474 and works derived therefrom;
>
> C.    Defendants shall return all of [the] *WorkSTEPS Materials* to WorkSTEPS; and
>
> D.    Plaintiff's claims are dismissed with prejudice.

Consent Judgment [#32] at 2, Original Suit.  The Consent Judgment itself makes no mention of a

determination of validity, copyrightability, or infringement, let alone indicate an intent to be bound

in other proceedings.

Even were the Court to read "Defendants are jointly and severally liable as stated in the

Settlement Agreement" as a wholesale incorporation of the Settlement Agreement into the judgment,

the result would be the same.  First, concerning infringement, because ErgoScience revised its testing

forms as the parties negotiated settlement in the Original Suit, the materials WorkSTEPS now claims

infringe its copyright are not the same materials that were at issue in the Original Suit.  Thus, the

Court agrees with ErgoScience that any "determination" of infringement or stipulation thereto in the

Original Suit could have no collateral-estoppel effect as to the present question of ErgoScience's

alleged infringement. *See, e.g.*, *C.I.R. v. Sunnen*, 333 U.S. 591, 599–600 (1948) ("[Collateral estoppel] must be confined to situations where the matter raised in the second suit is *identical in all respects* with that decided in the first proceeding and where *the controlling facts* and applicable legal rules remain unchanged." (emphasis added)).

Second, concerning copyrightability and validity, the only language in the Settlement Agreement concerning those points is contained in prefatory "whereas" clauses, rather than operative portions of the Settlement Agreement: "WHEREAS, the *WorkSTEPS Copyrighted Works* is an original work of authorship. WHEREAS, the *WorkSTEPS Copyrighted Works* contain materials which are wholly original and which are copyrightable subject matter under the laws of the United States." Settlement Agreement at 2. These recitals do not "clearly show[] that the parties intended that the issue[s of validity and copyrightability] be foreclosed in other litigation." WRIGHT, MILLER & COOPER, FED. PRAC. & PROC. § 4443. Accordingly, because collateral estoppel does not bar Defendants from litigating validity, copyrightability, or infringement in this action, the Court grants Defendants' motion for summary judgment on WorkSTEPS' offensive collateral estoppel claim.

**B.    The Parties Failed to Form a Binding Contract**

The parties' preliminary dispute as to ErgoScience's alleged material breach is predicated on the assumption their Settlement Agreement is a binding, enforceable contract. The Court cannot agree with the parties' implicit assumption, and finds the Settlement Agreement unenforceable for lack of mutual assent. In the alternative, the Court addresses the parties' material breach and waiver arguments, and finds ErgoScience materially breached the Settlement Agreement, permitting WorkSTEPS to treat its waiver of the right to sue ErgoScience as rescinded. All roads thus lead to

Rome, as the practical outcome of both analyses is the same: WorkSTEPS may sue for ErgoScience's use of the non-redlined materials.

Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 529–30 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Roman v. Roman*, 193 S.W.3d 40, 50 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)). A "meeting of the minds," or the parties' mutual understanding and assent to the subject matter and essential terms of the contract, *id.* (citing *Weynand v. Weynand*, 990 S.W.2d 843, 846 (Tex. App.—Dallas 1999, pet. denied), is necessary to form a binding contract. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008). A term is "essential" if it is "one that the parties reasonably regarded, at the time of contracting, as a vitally important ingredient in their bargain." *Neeley v. Bankers Trust Co. of Tex.*, 757 F.2d 621, 628 (5th Cir. 1985) (applying Texas law). Stated differently, "[f]ailure to fulfill such a promise . . . would seriously frustrate the expectations of one or more of the parties as to what would constitute sufficient performance of the contract as a whole." *Id.*

Here, the parties cannot credibly contend the safe harbor was anything other than "a vitally important ingredient in their bargain"—which, perhaps, is the reason neither party briefed or even raised the issue of contract formation. As is evidenced by the continued existence of this litigation, there is no question ErgoScience's use of the redlined materials "seriously frustrated" WorkSTEPS' expectations as to what constituted sufficient performance of the settlement agreement. Given ErgoScience's mistaken belief WorkSTEPS approved the proposed safe harbor without change, and

WorkSTEPS' mistaken belief ErgoScience saw and assented to the redlined safe harbor, the Court finds WorkSTEPS and ErgoScience did not reach agreement on a material term of the Settlement Agreement: what materials ErgoScience could safely use without threat of further accusations of infringement from WorkSTEPS. Consequently, no contract was formed, and the Settlement Agreement is unenforceable.

### 1. Alternatively, ErgoScience materially breached the Settlement Agreement

In the alternative, the Court finds ErgoScience materially breached the Settlement Agreement by using the redlined materials. Under the Settlement Agreement, ErgoScience agreed (1) to pay WorkSTEPS $75,000.00, (2) "to be permanently enjoined from use of [WorkSTEPS' copyrighted materials] and works derived therefrom," and (3) "to immediately cease and desist using all and any parts of [WorkSTEPS' copyrighted materials] and works derived therefrom[.]" Settlement Agreement at 3 ¶¶ 1–3. In return, WorkSTEPS "expressly waive[d] any claim for copyright infringement against Ergoscience based on Ergoscience's reproduction or distribution of the materials in the [safe harbor] exclusively." *Id.* at 4 ¶ 10. These promises were dependent promises going to the heart of the Settlement Agreement. *See D.E.W., Inc. v. Depco Forms, Inc.*, 827 S.W.2d 379, 382 (Tex. App.—San Antonio 1992, no writ) ("A dependent promise is one which goes to the entire consideration of a contract."). When ErgoScience used the redlined materials, it used a portion of WorkSTEPS' copyrighted materials in breach of its promises. Although ErgoScience's breach may have been inadvertent, it was nonetheless a breach, and it deprived WorkSTEPS of the most important part of its bargain: an end to ErgoScience's unauthorized use of WorkSTEPS' copyrighted materials.

Because ErgoScience materially breached by failing to perform as promised, WorkSTEPS was permitted to suspend its own performance and treat its waiver of the right to sue as rescinded. *See Murray v. Crest Constr., Inc.*, 900 S.W.2d 342, 344 (Tex. 1995) (per curiam) ("When a claim is released for a promised consideration that is not given, the claimant may treat the release as rescinded and recover on the claim." (internal quotation omitted)); *Miller v. Kennedy & Minshew, Prof'l Corp.*, 142 S.W.3d 325, 341 n.38 (Tex. App.—Fort Worth 2003, pet. denied) (citing *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982)) ("Generally, a party's breach of mutually dependent, reciprocal promises in a contract excuses performance by the other party.").

Resisting this conclusion, ErgoScience argues WorkSTEPS treated the Settlement Agreement as continuing following ErgoScience's breach. *See Long Trusts v. Griffin*, 222 S.W.3d 412, 415 (Tex. 2006) (per curiam) ("A party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part." (internal quotation omitted)).  While not entirely clear from its briefing, it appears ErgoScience contends certain letters exchanged between counsel in an attempt to resolve this dispute without Court intervention qualify as an election to treat the Settlement Agreement as continuing. *See* Defs.' Reply & Resp. Pl.'s Mot. Summ. J. [#39] at 9 (referencing WorkSTEPS' alleged "ratification of the safe-harbor provision in 2014, after this dispute arose").  The Court cannot agree.  Participation in settlement negotiations related to a breach of contract does not qualify as an election to treat the contract as continuing. *See* WILLISTON ON CONTRACTS § 39.32 ("[W]hen the innocent party brings its complaints to the defaulting party's attention, and continues the relationship only on the assurance of better future performance, she will not be barred from asserting her rights under the contract[,] . . . and a waiver of the right to the promised performance cannot be found.").  This is good policy: were settlement negotiations

considered elections to continue a contract, parties would be severely disincentivized from attempting to resolve their disagreements absent judicial intervention. Consequently, WorkSTEPS is free to bring a cause of action for infringement based on ErgoScience's use of the non-redlined materials.

### C.   WorkSTEPS Did Not Waive Its Right to Contend the Non-Redlined Material Infringes

Finally, the Court turns to the question whether WorkSTEPS has conceded the non-redlined material does not infringe its copyright. ErgoScience argues WorkSTEPS has done so for four reasons: (1) after this dispute arose, WorkSTEPS confirmed in writing that the non-redlined material does not infringe; (2) during the show cause hearing in the Original Suit, Larry Feeler testified WorkSTEPS had no objection to ErgoScience's use of the non-redlined material; (3) WorkSTEPS' motion for contempt in the Original Suit, upon which this new action is based, did not bring claims for infringement regarding any of the non-redlined material; and (4) in the Settlement Agreement itself, WorkSTEPS unconditionally stipulated the non-redlined material does not infringe.

ErgoScience's first argument again refers to the letters exchanged by counsel during the parties' failed attempt to settle this dispute. ErgoScience neither cites any legal authority nor even articulates a legal theory that supports its position on this point. WorkSTEPS' statements during settlement negotiations neither give rise to judicial estoppel nor are judicial admissions, and provide no basis to find waiver. *See Hopkins v. Cornerstone Am.*, 545 F.3d 338, 347 (5th Cir. 2008) (invocation of judicial estoppel requires the court "have accepted the party's earlier position"); *Giddens v. Cmty. Educ. Ctrs., Inc.*, 540 F. App'x 381, 390 n.3 (5th Cir. 2013) (unpublished) ("A judicial admission is a formal concession in the pleadings or stipulations[.]").

-16-

The Court is similarly unmoved by ErgoScience's claim Feeler's testimony during hearing waived WorkSTEPS' right to bring an infringement claim based on ErgoScience's use of the non-redlined materials. Feeler's testimony was, again, neither a basis for invocation of judicial estoppel nor a judicial admission. *See Hopkins*, 545 F.3d at 347; *Giddens*, 540 F. App'x at 390 n.3. Further, counsel for WorkSTEPS did not have the opportunity to take Feeler's redirect testimony during hearing. The Court declines to find waiver under these circumstances.

ErgoScience's third argument is factually inaccurate. While WorkSTEPS' briefing in the present action does identify several examples of alleged infringement WorkSTEPS did not identify in the Original Suit, WorkSTEPS did raise claims for infringement in the Original Suit based on ErgoScience's use of the non-redlined material. In fact, ErgoScience pointed out that WorkSTEPS did so. *See* Defs.' Resp. Mot. Order Show Cause [#54] (sealed) at 2, Original Suit ("WorkSTEPS is asking this Court to hold ErgoScience in contempt for using material contained in the safe harbor materials that WorkSTEPS *did not* cross out, that WorkSTEPS *expressly agreed was not infringing*, and over which WorkSTEPS *waived* any claim of infringement."); *id.* at 3, 22–23 (noting WorkSTEPS claims copying of its non-redlined blood pressure screening formulation and instructions on how to handle a belligerent applicant). It is therefore not the case, as ErgoScience contends, that "[u]ntil this very moment . . . WorkSTEPS[] has complained only about the small amount of material it redlined." Defs.' Reply & Resp. Pl.'s Mot. Summ. J. [#39] at 2. Moreover, even had WorkSTEPS' complaints in the context of the Original-Suit motion for contempt been limited to the redlines, ErgoScience does not explain why WorkSTEPS would be prohibited from asserting additional infringement claims in the context of a brand-new lawsuit.

ErgoScience's final argument—that WorkSTEPS conceded non-infringement of the non-redlined material in the Settlement Agreement—is a non-starter, given the Court's finding the Settlement Agreement is unenforceable. Considering the question in the alternative, the Court finds WorkSTEPS did not concede non-infringement in the Settlement Agreement. The relevant provision reads as follows:

> WorkSTEPS has reviewed the Ergoscience materials attached to this agreement in [the safe harbor] and concludes the materials in [the safe harbor] do not infringe WorkSTEPS' copyright rights.  WorkSTEPS expressly waives any claim for copyright infringement against Ergoscience based on Ergoscience's reproduction or distribution of the materials in [the safe harbor] exclusively.

Settlement Agreement at 4 ¶ 10. ErgoScience contends this language unambiguously demonstrates WorkSTEPS conceded the non-redlined material does not infringe its copyright. WorkSTEPS, on the other hand, argues the statement the materials "do not infringe" is a conditional promise, part and parcel of the conditional waiver of WorkSTEPS' infringement claims.  The Court agrees with WorkSTEPS.

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).  Courts must read all provisions of an agreement together, interpreting the agreement to give each provision its intended effect. *Mustang Tractor & Equip. Co. v. Liberty Mut. Ins. Co.*, 76 F.3d 89, 91 (5th Cir. 1996) (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994)).  "We must be particularly wary of isolating individual words, phrases, or clauses and reading them out of context of the document as a whole." *Id.* (citing *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995)).  Here, while ErgoScience's reading of the provision may exert some pull when the first sentence is isolated and read out of context, it does not make

sense when read with the remainder of the provision or in light of the Settlement Agreement as a whole. Had WorkSTEPS intended the first sentence of the provision to be read as a concession the safe-harbor materials do not infringe, there would have been no need for a second sentence waiving any infringement claims concerning the safe-harbor materials. Further, the safe harbor itself (which is part of the Settlement Agreement) indicates *not* that WorkSTEPS concedes its contents do not infringe, but that WorkSTEPS *is not alleging* its contents infringe: the safe harbor is titled "Docu[me]nts Reviewed By WorkSTEPS and Which WorkSTEPS *Does Not Allege Infringe* Its [Copyright]." Settlement Agreement [#8-3], at 22, Ex. C (emphasis added).

Under the Settlement Agreement, ErgoScience is obligated to stay within the safe harbor, and WorkSTEPS is reciprocally obligated not to sue ErgoScience for its use of materials within the safe harbor. Reading the safe-harbor provision to relieve ErgoScience of its obligation to stay within the safe harbor but hold WorkSTEPS to its obligation not to sue would deprive WorkSTEPS of the benefit of its bargain. The Court concludes, in the alternative, that WorkSTEPS did not waive its ability to contend the non-redlined materials infringe its copyright.

## D.     Infringement

Having resolved the preliminary questions, the Court turns to the heart of the dispute: ErgoScience's alleged infringement. Copyright law protects "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). The primary objective of copyright "is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.'" *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) (quoting U.S. CONST. art. I, § 8, cl. 8). To that end, copyright protects an author's original expression of an idea, but never the idea itself—a truism termed the idea/expression dichotomy. *Id.* at 350; *see* 17 U.S.C. § 102(b) ("In no case does

copyright protection . . . extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is . . . embodied in such work."). Stated differently, "copyright rewards originality, not effort." *Feist*, 499 U.S. at 364.

To establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Id.* at 361. Ownership of a valid copyright is established by proving the originality and copyrightability of the material and compliance with the statutory formalities. *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possess at least some minimal degree of creativity." *Feist*, 499 U.S. at 345. A timely-obtained certificate of copyright registration is prima facie evidence of copyright ownership and validity. 17 U.S.C. § 410(c); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004). However, "where other evidence in the record casts doubt on the question, validity will not be assumed." *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.*, 596 F.3d 1313, 1319 (11th Cir. 2010) (internal quotes and alterations omitted). To demonstrate the second element—copying—a plaintiff must prove (1) factual copying and (2) substantial similarity. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (2010). Stated differently, copying is established by proving the defendant had access to the copyrighted material and there is a substantial similarity between the protectable elements of the two works. *Norma Ribbon*, 51 F.3d at 47.

The Court will consider each prong in turn.

1.     **Ownership of a valid copyright**

There is no dispute WorkSTEPS owns its copyright and complied with the statutory formalities; thus, as to the first prong of the test, the only issues in play are originality and copyrightability. Further, WorkSTEPS is entitled to the statutory presumption in its favor, as it holds a timely obtained copyright certificate of registration. *See* Mot. Order Show Cause [#39-2] (sealed) Ex. A (Certificate of Registration), Original Suit. Attempting to rebut the presumption, ErgoScience argues the WorkSTEPS Materials are unoriginal and non-copyrightable for two reasons: first, because the WorkSTEPS Materials are blank forms, and second, because the WorkSTEPS Materials lack the minimal creativity that is the touchstone for originality. WorkSTEPS responds the blank-form doctrine does not apply, as the arrangement of information in the WorkSTEPS Materials is itself informative, and contends the WorkSTEPS Materials clear the creativity bar, characterizing them as "factual compilations" which exhibit minimal creativity in selection and arrangement. Analyzing these two related issues, the Court concludes WorkSTEPS owns a valid copyright as a matter of law because the WorkSTEPS Materials exhibit minimal creativity and therefore do not fall within the ambit of the "blank form" doctrine. *See Kregos v. Associated Press*, 937 F.2d 700, 709 (2d Cir. 1991) (noting the conclusion a work displays sufficient creativity to survive a defendant's motion for summary judgment preludes rejecting it as a blank form).

ErgoScience is correct that a truly "blank" form, which "conveys no information and serves only to provide blank space for recording information[,] contains no expression or selection of information that could possibly warrant copyright protection." *Id.* at 708. However, "it should be equally obvious that a writing that does contain a selection of categories of information worth recording, sufficiently original and creative to deserve a copyright as a compilation of facts, cannot

lose that protection simply because the work also contains blank space for recording the information." *Id.* As the Second Circuit explained:

> When the Copyright Office denies a copyright to scorecards or diaries that do not in themselves convey information, it must be contemplating works with headings so obvious that their selection cannot be said to satisfy even minimal creativity (a baseball scorecard with columns headed 'innings' and lines headed 'players'; a travel diary with headings for 'cities,' 'hotels,' and 'restaurants'). Such a work conveys no information, not just because it contains blanks, but because its selection of headings is totally uninformative. On the other hand . . . books intended to record the events of baby's first year, or a record of a European trip, . . . *may* evince considerable originality in suggestions of specific items of information which are to be recorded, and in the arrangement of such items.

*Id.* at 708–09 (internal quotations and citations omitted). The WorkSTEPS Materials are more closely analogous to a book intended to record the events of baby's first year than a travel diary with generic headings. Selecting the most insightful categories of information such that an employee's functional capacity can be helpfully and accurately assessed by WorkSTEPS is the whole point of the WorkSTEPS functional capacity evaluation, and to that end, the WorkSTEPS Materials are highly detailed and specific in the categories and types of information they indicate should be recorded. *See, e.g.*, Mot. Dismiss [#8-5] (sealed) (Functional Capacity Examination) at 1 (prompting the question "How do the following activities make you feel?" as to bending, sitting, rising, standing, lying down, "[in the m]orning," "[a]s day progresses," and "[in the e]vening"); *id.* (prompting question as to "Social Limitations" concerning hobbies, sports, sexual relations, housework, and work).[3] Further, the testimony of Larry Feeler, WorkSTEPS' CEO and the architect of the WorkSTEPS Materials, corroborates this conclusion. Feeler testified at the time he created the materials, for example, he had "actually never seen anybody do [a musculoskeletal exam] this way"

---

[3] The Court notes there appear to be several versions of WorkSTEPS' materials filed in this case. The Court cites and refers to the work deposited with the Copyright Office.

and, aware of the gap in the market, he "designed a test with all these complex measurements, because at that time, there was no standard . . . . so basically I tried to standardize this process all at once." Show Cause Hr'g Tr. [#60] at 19:10–19, 28:17–29:2.  To be clear, Feeler's testimony supports the conclusion the WorkSTEPS Materials are minimally creative *not* because a trailblazer's work *a fortiori* deserves copyright protection (which it does not), but rather, because ErgoScience has adduced no persuasive evidence showing WorkSTEPS' selection of categories and types of information is obvious, nor otherwise demonstrated the WorkSTEPS Materials lack minimal creativity.

ErgoScience contends the Eleventh Circuit's *Utopia Provider* decision compels a finding the WorkSTEPS Materials are non-copyrightable; on the contrary, *Utopia Provider* supports the opposite conclusion.  The *Utopia Provider* court held certain templates designed for use by a physician to record a emergency-room patient's medical history and present symptoms were non-copyrightable blank forms.  596 F.3d at 1320–23.  The templates provided space for recording information with respect to a patient about basic identifying information, "the history of the present illness, a review of symptoms, medical and social history, physical exam, medical decision making, clinical impressions, and finally, consultation, disposition, and instructions." *Id.* at 1323.  The copyright holder argued the templates were creative in their selection and arrangement of information; the panel, however, disagreed.  *Id.* at 1322.  In conducting its analysis, the panel explained "[t]he only way the [templates] could convey information would be in the selection of the terms on the forms; that is, if they convey information to the doctors about what questions they should be asking." *Id.* at 1320–21.  The panel then found the templates conveyed no information,

as the categories of information the templates sought to capture were the major categories routinely considered when a doctor examined an emergency-room patient. *Id.* at 1323.

Unlike the templates in *Utopia Provider*, the WorkSTEPS Materials convey information to providers regarding the questions they should be asking of the employees being evaluated.  As previously explained, the WorkSTEPS Materials contain far more than general headings such as "physical exam," "clinical impressions," and the like followed by blank spaces.  Unlike the *Utopia Provider* templates, which captured major categories of information any emergency room physician would obtain in a basic exam, the WorkSTEPS Materials are designed to guide WorkSTEPS' providers through the process of collecting information relevant to a WorkSTEPS functional capacity evaluation.  *See, e.g.*, Functional Capacity Examination at 6 (prompting the questions whether aerobic fitness is required by the employee's job, the length of time the employee's job will require him or her to sit or stand, and the pounds of weight the employee's job will require him or her to lift alongside cardiovascular and activity tolerance analyses).  The WorkSTEPS Materials exhibit the requisite creativity and are not blank forms.  Consequently, WorkSTEPS owns a valid copyright, and WorkSTEPS is entitled to summary judgment on the first prong of the copyright-infringement test.

## 2.     Substantial similarity

Turning to the issue of substantial similarity, the Court finds there are genuine issues of material fact precluding summary judgment for either party.  To determine whether two works are substantially similar, "a side-by-side comparison" must be made between the copyrighted and allegedly infringing works.  *Lee*, 379 F.3d at 142.  Substantial similarity is determined by the comparison, not by the parties' credibility. *King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999).  Where "'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook

them, and regard the aesthetic appeal of the two works as the same[,]'" the works are substantially similar. *R. Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 683 (S.D. Tex. 2000) (alterations omitted) (quoting *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir. 1992)). A party claiming infringement "may place no reliance upon any similarity in expression resulting from unprotectable elements" of the copyrighted work. *Randolph v. Dimension Films*, 630 F. Supp. 2d 741, 746 (S.D. Tex. 2009) (internal quotes omitted) (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994)).

"Because substantial similarity is customarily an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation." *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1297 (D.C. Cir. 2002) (quoting *A.A. Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir. 1980)). "Accordingly, a finding of infringement is generally inappropriate at the summary judgment stage." *Am. Registry of Radiologic Technologists v. Bennett*, 939 F. Supp. 2d 695, 707 (W.D. Tex. 2013) (noting only two occasions in which courts in this Circuit have granted summary judgment in favor of a plaintiff on a copyright infringement claim).

Two points must be noted at the outset. First, despite the mountain of paper the parties have filed in this action (and in the Original Suit), substantial similarity has not been comprehensively briefed given the parties' inability to agree on the scope of the claims at issue. Second, the Court's ruling WorkSTEPS owns a valid copyright "does not, of course, mean [WorkSTEPS] will necessarily obtain much of a victory. 'Even if a work qualifies as a copyrightable compilation, it receives only limited protection. . . . [C]opyright protects only the elements that owe their origin to the compiler—the selection, coordination, and arrangement of facts.'" *Kregos*, 937 F.2d at 709 (quoting *Feist*, 499 U.S. at 359). Ideas, systems, and processes, of course, are also unprotectable.

-25-

In examining the portions of the WorkSTEPS Materials cited by WorkSTEPS, reading WorkSTEPS' briefing, and reviewing Feeler's testimony, it appears WorkSTEPS' infringement claims may be at least partially rooted in objections to ErgoScience's use of unprotectable elements of the WorkSTEPS Materials. WorkSTEPS cannot, for example, claim copyright in the *idea* to include nerve root designations in a musculoskeletal examination such that a provider conducting a functional capacity test can screen the subject for nerve damage. *See* 17 U.S.C. § 102(b). Nor may WorkSTEPS claim copyright in the *system* of joint stability measurement used in the WorkSTEPS Functional Capacity Evaluation, even if, as WorkSTEPS claims, Feeler cut that system from whole cloth. *Id.* And perhaps most importantly, WorkSTEPS may not claim copyright in the *process* by which it conducts a musculoskeletal examination, or, for that matter, a functional capacity evaluation on the whole. *Id.*

After filtering out the unprotectable elements of the work, a side-by-side review of the WorkSTEPS Materials and the ErgoScience materials reveals the two works are neither so dissimilar nor so similar that no reasonable juror could find, respectively, substantial similarity or the absence thereof. WorkSTEPS urges, for example, that the two works' overall musculoskeletal examinations are substantially similar, and claims the alleged copying is legally actionable because the musculoskeletal examination is the heart of WorkSTEPS' copyrighted work. As for substantial similarity, the Court has its doubts: the headings of each subpart of the musculoskeletal test, for example, are expressed in a different order and use different language, and the tables contained within each subpart strike the Court as dissimilar in arrangement. A comparison of WorkSTEPS' "Joint Integrity" table with ErgoScience's "Joint Stability" table, for example, shows that while WorkSTEPS' joint-stability measurement scale is expressed as a three-column table within the joint

-26-

stability table, ErgoScience's measurement scale is expressed as a single line. In other respects, however, the two joint tables are at least somewhat similar: both use a three-column format, and each have separate spaces to record information about the right and left side of the body for each joint tested. *See* Functional Capacity Examination at 6; Mot. Dismiss [#8-7] (sealed), Ex. 6 (ErgoScience Materials) at 9. Further, WorkSTEPS' "Strength" table and ErgoScience's "Myotome/Strength" table, also part of the musculoskeletal examination, are similar in that both use columns which, from left to right, list the muscle being tested and the corresponding nerve root, provide a space to record information about that muscle on the right side of the body, and provide a space to record information about that muscle on the left side of the body. WorkSTEPS' table, however, includes an additional column labeled "cogwheel" not found in ErgoScience's table. *See* Functional Capacity Examination at 5; ErgoScience Materials at 8–9.

Whether these two works are ultimately similar or dissimilar from a layman's point of view and whether, if similarities exist, those similarities are qualitatively so important the copying should be legally actionable, is for the factfinder, not the Court, to determine. The Court finds there are genuine issues of material fact precluding summary judgment for either party on the issue of substantial similarity.

**E.     Breach of Contract**

Finally, ErgoScience argues it is entitled to summary judgment on WorkSTEPS' state-law breach-of-contract claim because the claim is preempted by copyright law. As previously noted, given the Court's finding the parties never formed a binding Settlement Agreement, ErgoScience is entitled to summary judgment on the claim. Alternatively, the Court agrees the breach-of-contract claim is preempted.

For a state-law claim to be preempted by the Copyright Act, a two-factor test must be satisfied. *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012). "'First, the claim is examined to determine whether it falls within the subject matter of copyright as defined by 17 U.S.C. § 102.'" *Id.* (quoting *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003)). Second, "'the cause of action is examined to determine if it protects rights that are equivalent to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106.'" *Id.* (quoting *Dynegy*, 344 F.3d at 456). The second prong "is commonly referred to as the 'extra element' test," because it asks whether the asserted cause of action requires proof of "one or more qualitatively different elements" than a copyright infringement claim. *Dynegy*, 344 F.3d at 456 (quoting *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787 (5th Cir. 1999)).

In its complaint, WorkSTEPS alleges Lechner and ErgoScience breached their Settlement Agreement obligations by their: "own infringement and use" of the WorkSTEPS Materials; "distribution of [the WorkSTEPS Materials] and works derived therefrom to ErgoScience Providers"; "contribution to the infringement of [the WorkSTEPS Materials] by ErgoScience Providers"; and "induc[ement of] infringement of [the WorkSTEPS Materials] by ErgoScience Providers." Compl. [#1] ¶¶ 61–63. The parties do not appear to dispute that the first factor of the test is satisfied; in any event, WorkSTEPS' breach-of-contract claim clearly concerns rights to the WorkSTEPS copyrighted materials, which fall within the scope of copyright law. *See* 17 U.S.C. § 102(a)(1) (copyright protects "works of authorship," including "literary works"[4]). As for the second factor, the Court finds it, too, is satisfied. The exclusive rights provided by copyright include

---

[4] "'Literary works' are works, other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied." 17 U.S.C. § 101.

the rights to reproduce the copyrighted work, prepare derivative works, distribute copies of the work to the public, and display the work publicly.  17 U.S.C. § 106.  A right is equivalent to those exclusive rights "if the mere act of reproduction, distribution, or display infringes it."  *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990).  WorkSTEPS' breach-of-contract claims, which, as plead, are based on "infringement," "use," "distribution," "contribution to []" infringement," and "induc[ement of] infringement," *see* Compl. [#1] ¶¶ 61–63, involve the same conduct as an infringement claim and protect rights upon which mere reproduction, distribution, or display of WorkSTEPS' copyrighted materials would infringe.  Accordingly, WorkSTEPS' breach-of-contract claim is preempted by the Copyright Act.

## Conclusion

Substantial similarity will be tried to the jury; thereafter, one hopes, this acrimonious litigation will finally come to a close.  Rare is the action originally dismissed with prejudice by consent of the parties that finds its way back before the Court, and this one stands as a lesson to all attorneys licensed to practice in this and other Districts: intimately familiarize yourselves with the electronic redlining features (or, perhaps, foibles) of Adobe Acrobat, as here, but for the grace of God, you may arrive.

Accordingly:

IT IS ORDERED that Plaintiff's Motion to File Pleadings Under Seal [#32] (sealed) is GRANTED;

IT IS FURTHER ORDERED that Defendants ErgoScience, Inc. and Deborah E. Lechner's Motion to Dismiss [#8], which this Court converts to a motion for summary judgment, is GRANTED IN PART and DENIED IN PART as described in this opinion;

IT IS FINALLY ORDERED that Plaintiff's Cross-Motion for [Partial] Summary Judgment [#32-2] (sealed) is GRANTED IN PART and DENIED IN PART as described in this opinion.

SIGNED this the 20th day of April 2015.

Sam Sparks

SAM SPARKS
UNITED STATES DISTRICT JUDGE